T.C. Memo. 2012-199

UNITED STATES TAX COURT

A-VALEY ENGINEERS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17863-09L.                          Filed July 17, 2012.

<u>Shelley C. Dugan</u>, for petitioner.

<u>Harry J. Negro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  The petition in this case was filed in response to a notice of determination concerning collection action sustaining a final notice of intent to levy with respect to income tax and accuracy-related penalties for tax years ending September 30, 1998 through 2000.  The issues for decision are:

(1) whether petitioner was entitled to challenge assessed accuracy-related penalties at its collection due process (CDP) hearing. We hold petitioner was not;

(2) whether a settlement officer abused his discretion in rejecting petitioner's request for abatement of interest. We hold that he did not; and

(3) whether either settlement officer[1] assigned to this case abused his or her discretion in rejecting petitioner's proposed offers-in-compromise. We hold that the settlement officers did not.

## FINDINGS OF FACT

At the time its petition was filed, petitioner was a Pennsylvania corporation which had its principal place of business in Pennsylvania. Lothar Budike, Sr., is the president of petitioner, and he and his wife, Alexandra Budike, own 100% of the company stock. Petitioner reports its Federal income tax on a fiscal year ending September 30.

After an audit, respondent determined deficiencies in petitioner's income tax for the taxable years ending September 30, 1998 through 2000. Respondent also determined accuracy-related penalties for those tax years. On March 8, 2006, petitioner filed a petition with the Tax Court at docket No. 4839-06 disputing the

---

[1]As described infra, two settlement officers were assigned to this case at different times

deficiencies and penalties. On November 20, 2008, the Court entered a stipulated decision under which petitioner was liable for deficiencies totaling $214,051 and accuracy-related penalties totaling $21,405.

On February 3, 2009, a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, was sent to petitioner for the unpaid tax liabilities for the taxable years ending September 30, 1998 through 2000. In response, petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153 petitioner stated that it "should not be responsible for interest and penalties".

On April 15, 2009, a CDP hearing was held with the first settlement officer. During the CDP hearing petitioner raised the issues of penalty abatement and interest abatement. The settlement officer advised petitioner that he could not consider penalty and interest abatement because petitioner had signed a stipulated decision for the years at issue. Petitioner also inquired about an offer-in-compromise. The settlement officer explained the process and requested that petitioner submit a Form 656, Offer in Compromise (OIC), if interested in pursuing an OIC.

A few weeks after the CDP hearing, the settlement officer received petitioner's OIC. The OIC proposed to settle petitioner's outstanding liabilities

for $27,000, and petitioner made a $5,400 payment toward the $27,000 when it submitted the OIC.[2] Petitioner also submitted a Form 433-B, Collection Information Statement for Businesses, business checking account statements for the period January 1 through March 31, 2009, and a copy of a Form 1120, U.S. Corporation Income Tax Return, for the taxable year ending September 30, 2008, which was signed by Mr. Budike on April 20, 2009.

On June 17, 2009, the settlement officer advised petitioner that the OIC would not be accepted because petitioner's Form 1120 submitted with the OIC showed loans to shareholders of $443,887 as of October 1, 2007, and $468,888 as of September 30, 2008. The Form 1120 showed no loans from shareholders to the corporation at either the beginning or end of the taxable year. In addition, petitioner's returns for the periods ending September 30, 2006 and 2007, reported loans to shareholders of $451,000 and $441,000, respectively. Petitioner's representative asserted that the tax returns were in error and that Mr. and Mrs. Budike were actually lending petitioner money. Petitioner provided the settlement officer with a letter from its accountant which stated that the loans to shareholders

---

[2]Petitioner's OIC stated that the bases for the OIC were both doubt as to collectibility and effective tax administration. With regard to the effective tax administration claim, petitioner stated that payment of the tax liability would result in an economic hardship for Mr. and Mrs. Budike.

reported on petitioner's Federal income tax returns for the taxable years 2005, 2006, 2007, and 2008 did not accurately reflect petitioner's financial position. Mr. Budike also submitted a letter which asserted that petitioner owed Mr. and Mrs. Budike money.

On July 10, 2009, the settlement officer mailed petitioner a Notice of Determination Concerning Collection Action Under Section 6320[3] and/or 6330 which rejected petitioner's OIC and sustained respondent's collection action in full. On July 27, 2009, petitioner filed a petition for lien or levy action under sections 6320(c) and 6330(d). The petition alleges that: (1) respondent erred because he did not abate penalties; (2) respondent erred because he did not abate interest; and (3) respondent abused his discretion in not approving petitioner's OIC.

Respondent later acknowledged that the settlement officer had incorrectly determined that petitioner could not raise the interest abatement claim during the CDP hearing. As a result, on November 10, 2009, respondent filed a motion to remand the case for a new CDP hearing on the interest abatement issue. On November 16, 2009, we issued an order granting respondent's motion.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

On March 3, 2010, the settlement officer met with petitioner to consider the interest abatement issue. Petitioner requested that interest and penalties for the taxable years ending September 30, 1998 through 2000, be abated in full. Petitioner stated that the revenue agent assigned to the audit of petitioner's returns was biased against petitioner and that he overstated income and denied expenses because of this bias.[4] Petitioner also made various claims that the Appeals officer assigned to the income tax deficiency case sought to cover up improper actions taken by the revenue agent and repeatedly delayed the Appeals process. However, the settlement officer determined that delays during the prior Appeals process were the fault of petitioner.

After considering the information petitioner provided, the settlement officer determined that there was no delay attributable to the actions of respondent's officers or employees. On March 10, 2010, the settlement officer issued a Supplemental Notice of Determination Concerning Collection Action Under Section 6320 and/or 6330 (supplemental notice of determination) denying petitioner's request for interest abatement. The settlement officer's supplemental

---

[4]Petitioner alleged numerous illegal activities undertaken by the revenue agent in connection with the investigation into petitioner's tax returns.

notice of determination specifically discussed interest abatement under section

6404.

On October 20, 2009, petitioner submitted a second OIC, proposing to settle

its outstanding liabilities for $18,000[5] on grounds of doubt as to collectibility and

effective tax administration.[6] As with the first OIC, petitioner also submitted a

Form 433-B, business checking account statements for the period January 1 through

March 31, 2009, and a copy of an income tax return on Form 1120 for the taxable

year ending September 30, 2008, signed by Mr. Budike on July 10, 2009. The

Form 1120 submitted with the second OIC (second 2008 Form 1120) was different

from the Form 1120 submitted with the first OIC (first 2008 Form 1120);[7] while

both Forms 1120 showed loans to shareholders of $443,887 as of October 1, 2007,

the second 2008 Form 1120 showed no loans to shareholders at the end of the

---

[5]Over a 12-month period petitioner fully paid the $18,000 proposed OIC.

[6]As with the first OIC, the effective tax administration ground for the second OIC was based on petitioner's claim that payment of the tax liability would result in an economic hardship for Mr. and Mrs. Budike.

[7]The relationship between the two Forms 1120 for the taxable year ending September 30, 2008, is somewhat complex. While petitioner's representatives believed the first 2008 Form 1120 was filed with the Internal Revenue Service (IRS), petitioner never actually filed the first 2008 Form 1120 but only sent it to the first settlement officer with the first OIC. The second 2008 Form 1120 was the only Form 1120 for the taxable year ending September 30, 2008, which was actually filed with and processed by the IRS.

taxable year and loans from shareholders of $252,112 at the end of the taxable year.[8]

Although petitioner's second OIC was submitted before the case was remanded to the Appeals Office on November 16, 2009, petitioner's second OIC was not considered at the second CDP hearing.[9]  On January 20, 2011 (after the case was restored to our general docket following the second CDP hearing), petitioner filed a motion requesting that the Court remand this case to the Appeals Office for consideration of petitioner's second OIC.  Respondent did not object to petitioner's motion, and we granted petitioner's motion to remand on January 24, 2011.

A different settlement officer was assigned to consider the second OIC on remand.  This settlement officer scheduled a CDP hearing for May 3, 2011, and requested the following be provided by petitioner and Mr. and Mrs. Budike:  (1) substantiation of all loans made to and/or received from petitioner's shareholders; (2) copies of bank statements for all business and personal accounts for the period April 1, 2010, through March 31, 2011; (3) an income and expense statement for the

---

[8]The second 2008 Form 1120 did not show any loans from shareholders at the beginning of the taxable year ending September 30, 2008.

[9]The only issue considered at the second CDP hearing was petitioner's request for abatement of interest.

period April 1, 2010, through March 31, 2011; (4) copies of petitioner's amended Forms 1120; (5) a copy of petitioner's Form 1120 for the taxable year ending September 30, 2010; (6) a list of all of petitioner's real property; and (7) a list of all of petitioner's accounts receivable. Petitioner's representative sent a letter stating that petitioner had already provided all required documentation with the submission of the second OIC. At the CDP hearing on May 3, 2011, the settlement officer advised petitioner's representative that petitioner had not provided the documents and information requested. Petitioner's representative again stated that sufficient information had already been provided with the submission of the second OIC.

On June 1, 2011, the Appeals Office issued a supplemental notice of determination rejecting petitioner's second OIC on grounds of doubt as to collectibility because "The Settlement Officer could not fully evaluate the merits of * * * [the] OIC" because petitioner did not provide the requested information. The supplemental notice of determination also stated that "Your request for consideration of the OIC under * * * [effective tax administration] can not be considered because the liability is owed by a corporation." The case returned to our general docket, and a trial was held on November 15, 2011.

OPINION

I. Abatement of Penalties

Petitioner asserts that respondent erred by not abating the accuracy-related penalties assessed for the taxable years ending September 30, 1998 through 2000. Petitioner's only argument is that it was entitled to challenge the underlying penalty liabilities in a CDP hearing.

Section 6330 generally provides that the Commissioner cannot proceed with the collection of taxes by way of a levy on a taxpayer's property until the taxpayer has been given notice of and the opportunity for an administrative review of the matter and, if dissatisfied, with judicial review of the administrative determination. Sego v. Commissioner, 114 T.C. 604, 608 (2000). A taxpayer may challenge the existence or amount of an underlying liability in a CDP hearing under section 6330 if the taxpayer did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. at 609. The term "underlying tax liability" includes penalties assessed under the deficiency procedures. See Katz v. Commissioner, 115 T.C. 329, 338-339 (2000).

Respondent argues that petitioner had an opportunity to challenge the penalties in the prior Tax Court case, which resulted in entry of a stipulated

decision. As a result, respondent asserts that petitioner was not entitled to challenge the existence or amounts of the accuracy-related penalties in the CDP hearing. Petitioner claims respondent's argument is disingenuous because "petitioner did not know and could not have known the amount of interest and penalties that would be assessed as the case was 10 years old and that many of the delays and setbacks were due to and the fault of the IRS."

We find petitioner's argument unconvincing. Plainly, petitioner had the opportunity to dispute its liability for the accuracy-related penalties during the prior Tax Court case but chose to agree to a stipulated decision. Petitioner was therefore not entitled to challenge the existence or amount of the penalties during any later CDP hearing. See Katz v. Commissioner, 115 T.C. at 339 ("If a taxpayer has been issued a notice of deficiency or had the opportunity to litigate the underlying tax liability * * * the taxpayer is precluded from challenging the existence or amount of the underlying tax liability.").

## II. Abatement of Interest

Petitioner asserts that respondent erred by not abating interest assessed for the taxable years ending September 30, 1998 through 2000. Considering the facts of this case, we find that there was no abuse of discretion in denying petitioner's request for abatement of interest.

The Commissioner is permitted to abate the assessment of interest on any deficiency attributable to any unreasonable error or delay by an officer or employee of the IRS in performing a ministerial or managerial act.[10] Sec. 6404(e)(1)(A). A ministerial act is a procedural or mechanical act that does not involve the exercise of judgment or discretion by the Commissioner. Sec. 301.6404-2(b)(2), Proced. & Admin. Regs. A managerial act is "an administrative act that occurs during the processing of a taxpayer's case involving the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

Congress did not intend the interest abatement statute to be used routinely; rather, interest abatement is granted "'where failure to abate interest would be widely perceived as grossly unfair.'" Lee v Commissioner, 113 T.C. 145, 149 (1999) (quoting H.R. Rept. No. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844, and S. Rept. No. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208). This Court has jurisdiction under section 6404(h) to review the Commissioner's decision as to whether taxpayers are entitled to abatement of interest for the relevant tax years.

---

[10]Such a determination under sec. 6404 may be made in a sec. 6330 CDP hearing. Gray v. Commissioner, 138 T.C. __, __ (slip op. at 17-21) (Mar. 28, 2012). We note that (as was the case in Gray) the settlement officer's supplemental notice of determination specifically discussed interest abatement under sec. 6404 in denying petitioner's request for interest abatement.

Gray v. Commissioner, 138 T.C. __, __ (slip op. at 17-21) (Mar. 28, 2012) ("Our jurisdiction to review denials of section 6404 interest abatement requests made in section 6330 proceedings is well established."). To prevail, a taxpayer must prove that the Commissioner abused his discretion by exercising it arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). In reviewing for abuse of discretion, we generally consider only the arguments, issues, and other matters that were raised at the hearing or otherwise brought to the attention of the Appeals Office. Giamelli v. Commissioner, 129 T.C. 107, 115 (2007); Tinnerman v. Commissioner, T.C. Memo. 2010-150, aff'd, 448 Fed. Appx. 73 (D.C. Cir. 2012).

During the March 3, 2010, CDP hearing on the first remand, petitioner argued that abatement of interest was warranted because of various improper actions taken by the revenue agent and the Appeals officer assigned to petitioner's deficiency case which caused delays.[11] After considering petitioner's arguments, the settlement officer determined that delays during the prior Appeals process were the fault of petitioner and denied petitioner's request for abatement of interest.

_____

[11]Respondent denied petitioner's allegations at trial and the revenue agent's case activity record indicated that delays during the Appeals process were the fault of petitioner.

Considering the record, we do not believe that petitioner has proved that any ministerial or managerial error occurred, or that respondent otherwise abused his discretion in denying petitioner's request for abatement of interest. Petitioner has accused IRS employees of a multitude of illegal, delay-causing activities but has provided no evidence that such activities actually occurred. We therefore find respondent did not abuse his discretion in denying petitioner's request for abatement of interest.

## III. Rejection of Petitioner's OICs

A taxpayer may raise collection alternatives such as an OIC at a CDP hearing, and the Commissioner is authorized to compromise any civil case arising under the internal revenue laws. Secs. 6330(c)(2)(A)(iii), 7122(a). Section 301.7122-1(b), Proced. & Admin. Regs., sets forth three grounds for the compromise of a liability: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. The only ground for us to consider is doubt as to collectibility.[12]

---

[12]As discussed supra, petitioner is not entitled to challenge the underlying liabilities because petitioner previously entered into a stipulated decision regarding them. In addition, petitioner has failed to argue or present sufficient evidence to prevail on grounds of effective tax administration. We thus do not reach the issue (not addressed by the parties) regarding whether a corporation may be entitled to an OIC on effective tax administration grounds.

In general, the decision to accept or reject an offer, as well as the terms and conditions agreed to, are left to the discretion of the Commissioner.  Sec. 301.7122-1(a)(1), (c)(1), Proced. & Admin. Regs.  The Commissioner will usually compromise a liability only if the liability exceeds the taxpayer's reasonable collection potential.  Kreit Mech. Assocs., Inc. v. Commissioner, 137 T.C. 123, 134 (2011).  We do not conduct an independent review of what the Commissioner determines to be an acceptable offer.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).  Rather, when we review a determination to reject an OIC, we will reject the determination only if it was arbitrary, capricious, or without sound basis in fact or law.  Id.

Petitioner asserts that both settlement officers abused their discretion by:  (1) "Using a erroneous/invalid Tax Return to make their evaluations and determinations"; (2) delaying review of the second OIC; and (3) requesting additional information from petitioner before considering the second OIC.  Petitioner's first and third arguments both relate to the first 2008 Form 1120, which reported that Mr. and Mrs. Budike owed $468,888 to petitioner as a result of loans made to shareholders.  We will therefore consider those arguments together, after first addressing petitioner's second argument.

A.  Delay in the Processing and Review of Petitioner's Second OIC

Petitioner claims respondent acted arbitrarily and maliciously because he refused to process and review the second OIC timely even though he had it in his possession.  Petitioner also argues that the second OIC should be deemed to be accepted by respondent because of the delay.

Regarding deemed acceptance of the second OIC by respondent, petitioner mistakenly cites section 523(b)[13] of the proposed Tax Relief Act of 2005, which would have amended section 7122(f) to provide:

> Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer (12 months for offers-in-compromise submitted after the date which is 5 years after the date of the enactment of this subsection). * * *

S. 2020, 109th Cong., sec. 523(b) (2005).  This proposed statute led petitioner to incorrectly believe that the second OIC should have been accepted or rejected within 12 months.

A version of S. 2020 sec. 523(b) was enacted in the Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. No. 109-222, sec. 509(b)(2), 120 Stat. at

---

[13]This section does not exist in the final public law.

363. However, the enacted statute allows for a 24-month period for the Secretary to reject an OIC, providing:

> Any offer-in-compromise submitted under this section shall be deemed to be accepted by the Secretary if such offer is not rejected by the Secretary before the date which is 24 months after the date of the submission of such offer. For purposes of the preceding sentence, any period during which any tax liability which is the subject of such offer-in-compromise is in dispute in any judicial proceeding shall not be taken into account in determining the expiration of the 24-month period.

Id. Petitioner submitted its second OIC on October 20, 2009, and it was rejected on June 1, 2011. Therefore, the second OIC was properly rejected within 24 months of the date on which it was submitted and petitioner's argument fails. See sec. 7122(f). We therefore find the second OIC was not deemed to be accepted by respondent.

We also reject petitioner's related claim that respondent arbitrarily and maliciously delayed consideration of the second OIC. While petitioner did submit the second OIC before the March 3, 2010, CDP hearing, it provided no evidence that it sought to raise the second OIC during that hearing.[14] Shortly thereafter the

---

[14]Indeed, petitioner's January 20, 2011, motion to remand for consideration of the second OIC states that "On March 3, 2010, Appeals met with Petitioner to consider the interest abatement issue" and that "On March 9, 2010, Petitioner called the IRS * * * to find out what happened to the second offer-in-compromise."

case was restored to our general docket until the second remand on January 24, 2011, during which time respondent was unable to consider the second OIC. We also note that respondent did not object to petitioner's motion to remand for consideration of the second OIC and promptly held a CDP hearing regarding the second OIC after the motion was granted. Considering these facts, we find that respondent did not arbitrarily and maliciously delay consideration of the second OIC.

B. Alleged Loans to Shareholders

Petitioner claims the second settlement officer requested additional information from petitioner before the third CDP hearing solely because the first 2008 Form 1120 (submitted with the first OIC, but not filed with the IRS) showed outstanding loans to shareholders totaling $468,888 as of September 30, 2008. Similarly, petitioner faults the first settlement officer for rejecting the first OIC on account of the loans to shareholders reflected on the first 2008 Form 1120 because the first 2008 Form 1120 was never filed with the IRS. Petitioner asserts that the settlement officers "were so determined to punish the Taxpayer and prove that * * * [it] did something wrong that they knowingly, willfully and malicious used and relied on an erroneous/invalid Tax Return and not the official Tax Return logged into the IRS Computer System to make their final evaluations and

determinations". Petitioner also asserts that the second settlement officer made a blanket request for information which would have no impact on the case resolution. Petitioner claims such actions were in violation of Internal Revenue Manual protocol.

We disagree with petitioner. Although it is true that the first 2008 Form 1120 was never filed with the IRS as petitioner's tax return, it was submitted with petitioner's first OIC. That Form 1120, as well as the Forms 1120 for the taxable years ending September 30, 2006 and 2007 (which were filed with and processed by the IRS), all reported outstanding loans to shareholders in excess of $440,000. In addition, the second 2008 Form 1120 (which was filed with the IRS) reported loans to shareholders of $443,887 as of October 1, 2007.

The settlement officers encountered evidence in the administrative record that outstanding loans to petitioner's shareholders may have existed at the time the first and second OICs were filed. As a result, both settlement officers requested information from petitioner which was not available to the settlement officers internally.[15]

---

[15]Internal Revenue Manual (IRM) pt. 5.8.5.3.1 (Oct. 22, 2010), states that

A thorough verification of the taxpayer's * * * [Collection Information Statement], Form 433-A and/or Form 433-B, involves reviewing

(continued...)

The first settlement officer was told by petitioner's representatives that the outstanding loans to shareholders reported on petitioner's tax returns were incorrect. Petitioner also supplied that settlement officer with a letter from its accountant which stated that the filed tax returns were incorrect, as well as a letter from Mr. Budike which stated that petitioner actually owed Mr. and Mrs. Budike money. In spite of the letters, the settlement officer rejected petitioner's first OIC as a result of the outstanding loans to shareholders reported on the first 2008 Form 1120 and other prior filed tax returns.

---

[15](...continued)
taxpayer submitted documentation and information available from internal sources. As a general rule, additional documentation should not be requested when the information is readily available from internal sources or it would not change the recommendation.

In addition, IRM pt. 5.8.5.3.1.3 (Oct. 22, 2010), states that

If not present in the file when assigned for investigation and internal sources are not available or indicate a discrepancy, appropriate documentation should be requested from the taxpayer either verbal or written, to verify the information on the * * * [Collection Information Statement]. A request for additional information and verification should be based on the taxpayer's circumstances and the information must be necessary to make an informed decision on the acceptability of the taxpayer's OIC. Do not make a blanket request for information that would have no impact on the case resolution. Do not request any information that is available internally.

The second settlement officer requested the following information from petitioner and Mr. and Mrs. Budike to substantiate petitioner's claims regarding the loans to shareholders as stated on the second 2008 Form 1120: (1) substantiation of all loans made to and/or received from petitioner's shareholders; (2) copies of bank statements for all business and personal accounts for the period April 1, 2010, through March 31, 2011; (3) an income and expense statement for the period April 1, 2010, through March 31, 2011; (4) copies of petitioner's amended Forms 1120; (5) a copy of petitioner's Form 1120 for the taxable year ending September 30, 2010; (6) a list of all of petitioner's real property; and (7) a list of all of petitioner's accounts receivable. When petitioner refused to submit the requested information, the settlement officer rejected the second OIC.

Both settlement officers encountered multiple pieces of evidence in the administrative record which stated that outstanding loans to shareholders payable to petitioner existed, including the first Form 1120. Additional information relevant to the shareholder loan issue was then requested, and both OICs were rejected when petitioner failed to provide satisfactory evidence that no loans to shareholders existed. The information requested of petitioner was not available to the settlement officers internally (indeed, many of the internally available records stated that loans to shareholders existed), and no blanket request from petitioner was made. We

therefore find the respondent's determinations were not arbitrary, capricious, or without sound basis in fact or law.

IV. <u>Conclusion</u>

We hold that petitioner was not entitled to challenge assessed accuracy-related penalties at its CDP hearing. We further hold that respondent did not abuse his discretion in rejecting petitioner's request for an abatement of interest or in rejecting petitioner's proposed OICs. We therefore sustain respondent's determinations.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.